IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY JAEGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:18-cv-01310 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| VANDERBILT UNIVERSITY, ) | MAGISTRATE JUDGE HOLMES |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant Vanderbilt University's Motion for Summary Judgment. (Doc. No. 24). Plaintiff Gary Jaeger filed a response (Doc. No. 33) and Defendant filed a reply (Doc. No. 40). Defendant filed a Statement of Undisputed Facts in support of the Motion. (Doc. No. 26). Plaintiff responded to the assertions of fact and added additional statements of fact (Doc. No. 34) to which Defendant replied (Doc. No. 41).

For the reasons stated herein, Defendant's Motion is GRANTED in part, and DENIED in part.

## I.     BACKGROUND

Plaintiff Gary Jaeger filed this action alleging sex discrimination, race discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and sex discrimination in violation of Title IX, 20 U.S.C. § 1681(a). Plaintiff concedes that the discrimination claims should be dismissed. (Pl. Resp., Doc. No. 33 at 1 n.1). Accordingly, the Court limits its discussion of the facts to those related to the retaliation claim.

Plaintiff is a Senior Lecturer in Philosophy at Vanderbilt University. (Pl. Depo., Doc. No. 27-1 at PageID# 119). Vanderbilt appointed Plaintiff as Director of the Writing Studio in 2013 and reappointed him to that position in 2016. (Doc. No. 34, ¶ 2). The reappointment letter states:

> While you serve as the Director [of the Writing Studio], your annual teaching load will be 1-1, reduced from the standard full-time load of six courses in recognition of your administrative duties at the Writing Studio …Administrative service in the College of Arts and Sciences is at the pleasure of the Dean. In the event that you are not reappointed as Director of the Writing Studio or in the event that you are asked to step down from your position as Director, your position will be converted to a nine-month faculty position, with a base salary equivalent to 9/12 of your prevailing 12-month salary. The nine-month position will carry an expectation of a 3-3 course load or its equivalent.

(Doc. No. 34, ¶ 3). In July 2017, the Writing Studio transitioned from the College of Arts and Sciences to the Provost's Office. (Cyrus Dep., Doc. No. 27-5 at PageID# 372). Following the transition, Plaintiff's immediate supervisor was John Sloop, then Associate Provost for Digital Learning. Sloop reported to Vice Provost Cynthia Cyrus, who reported to Provost Susan Wente. (*Id*.). At this time, Plaintiff was given the added responsibility of Tutoring Services, which was also under the Provost's Office.

In August 2017, Plaintiff filed a grievance with Vanderbilt's Equal Opportunity Office ("EEO Office") alleging discrimination on the basis of race and sex against what Defendant characterizes as "the entire management structure," including Cyrus, Sloop, and Wente. (Doc. No. 34 at ¶ 22). Shortly thereafter, in September 2017, Sloop, Cyrus, and Cyrus's executive assistant, Kathryn Dudley, began discussing concerns about Plaintiff's performance as Director of the Writing Studio and Tutoring Services. (*Id*. at ¶ 18). The concerns centered around the centered around the failure to hold Writing Studio hours at the Commons Center, and Plaintiff's alleged poor response when ordered to open both locations. (*Id*. at ¶¶ 19-20). In mid-October, Cyrus informed the Provost that she, Sloop, and Dudley were considering removing Plaintiff as Director of the Writing Studio. (Doc. No. 34 at ¶ 21). Cyrus stated, however, that, at that time, she had not yet made a formal recommendation. (Cyrus Dep., Doc. No. 27-5 at PageID# 374).

In October 2017, Cyrus and Sloop were notified of the internal EEO grievance Plaintiff filed in August 2017. (*Id*. at ¶¶ 22, 23). Until that time neither of them was aware Plaintiff had filed a grievance against them and others. Once informed of the EEO complaint, they suspended the discussions of Plaintiff's performance until the EEO investigation was completed. (*Id*. at ¶ 24; Cyrus Dep., Doc. No. 35-2 at PageID# 661).

At some point while his EEO complaint was being investigated, Plaintiff requested to report to a different department because he was concerned about retaliation. (Doc. No. 34 at ¶¶ 25-26; Doc. No. 41 at ¶ 30-31). Plaintiff noted that on another occasion an employee was excused from having to report to him while her EEO complaint about him was pending.[1] Plaintiff's supervisors, including Cyrus, determined that there was "no opportunity for alternative reporting" and that Plaintiff would be placed on paid administrative leave beginning December 18, 2017. (*Id*.; *see also*, Jenious Dep., Doc. No. 27-1 at PageID# 302 (testifying that Cyrus made the decision to place Plaintiff on administrative leave)).

By January 5, 2018, the EEO office concluded its investigation into Plaintiff's complaints with a finding of no policy violations by Plaintiff's superiors. (Doc. No. 27-2 at PageID# 310). Plaintiff alleges the EEO office did not "truly" investigate his complaints, noting that they did not interview any of the staff members he identified. Anita Jenious testified that no one talked to any of the staff he had listed because the list was provided "pretty much by the time we were finished" and "had pretty much gotten all of what we thought was relevant information as concerned to his particular claims." (Jenious Dep., Doc. No. 27-2 at PageID# 301; *see also*, Doc. No. 41 at ¶ 33 (stating Defendant interviewed the witnesses it believed had relevant information)).

---

[1] The Complaint was resolved without any adverse finding against Plaintiff.

3

Although Plaintiff continued to receive pay for his role as Director of the Writing Studio, he never resumed his duties in that role. An Assistant Director was appointed Acting Director in Plaintiff's absence and remained in that role after Plaintiff returned from administrative leave in early 2018. (Doc. No. 34 at ¶ 39).

On January 11, 2018, Dr. Sloop emailed Vice Provost Cyrus a document that Defendant characterizes as a "draft letter detailing the reasons for Jaeger's removal." The letter lists six complaints regarding Plaintiff's performance and is alleged to form the basis of the removal letter sent in March 2018. (Doc. No. 27-10; Doc. No. 34 at ¶ 35).

On March 7, 2018, Plaintiff filed a Charge of Discrimination with the EEOC alleging claims for discrimination and retaliation on the basis of sex and race. (Doc. No. 27-1 at PageID# 207). On March 20, 2018, Plaintiff received a letter stating that the University was ending his service as Director of the Writing Studio. (Doc. No. 27-1 at PageID# 211-12). The letter details a list of "challenges with your leadership" including: leaving a position for assistant for Tutoring unfilled, closing the Writing Studio at the Commons Center, communicating in long and rambling emails, openly disagreeing with administrative decisions regarding job classification on two occasions, and failing to provide a list of his job duties. The letter directed that Plaintiff would return to his full-time position as Senior Lecturer of Philosophy in the fall and that he would continue to be paid at the current level of salary until August 15, 2018, but would be on "paid sabbatical" until classes resumed in the fall.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id.*

In evaluating a motion for summary judgment, the Court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence from which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

In ruling on a motion for summary judgment, "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). In determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely only upon those portions of the verified pleadings, depositions, and answers to

5

interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties. The Court must consider only evidence that can be presented in an admissible form at trial. *Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012) ("The proffered evidence need not be in admissible form, but its content must be admissible.")

### III. ANALYSIS

Plaintiff claims his termination as Director of the Writing Studio was in retaliation for his EEO complaint alleging discrimination and retaliation in August 2017 and EEOC Charge filed in March 2018. Title VII prohibits employers from retaliating against employees who oppose an unlawful employment practice. 42 U.S.C. § 2000e-3(a). Because Plaintiff offers no direct evidence of retaliation, the Court considers his claim under the *McDonnell Douglas* burden shifting framework. *Kenney v. Aspen Tech., Inc*., 965 F.3d 443, 448 (6th Cir. 2020) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). To establish a prima facie case of retaliation, Plaintiff must show: (1) he engaged in activity protected by Title VII; (2) the exercise of his protected rights was known to Defendant; (3) Defendant thereafter took an action that was materially adverse to the plaintiff; and (4) Plaintiff's protected activity was the but-for cause of the adverse employment action. *Id.* If Plaintiff establishes a prima facie case, the burden shifts to the Defendant to provide a legitimate, nondiscriminatory reason for its actions. *Id.* If Defendant satisfies this burden, the burden shifts back to Plaintiff to demonstrate that the proffered reason was a mere pretext for retaliation. *Id*.

Defendant concedes Plaintiff can establish the first three prongs of a prima facie case of retaliation.[2] The Court agrees these elements are easily satisfied. Defendant filed complaints of

---

[2] Defendant's initial brief addresses the retaliation claim only as it pertains to Plaintiff's removal as Director, but the reply brief adds the argument that being placed on administrative leave and the failure to thoroughly investigate Plaintiff's complaint of discrimination are not actionable adverse employment

6

discrimination with Defendant's EEO office in August 2017 and filed a charge with the EEOC on March 7, 2018. Defendant was aware of these protected activities and thereafter removed Plaintiff from his position as Director of the Writing Studio. What remains for consideration is whether Plaintiff can establish the final element of a prima facie case - causation.

Plaintiff must "produce sufficient evidence from which an inference can be drawn that he would not have been [removed] had he not engaged in the protected activity." *Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 571 (6th Cir. 2009). "Although no one factor is dispositive in establishing a causal connection, evidence … that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000); *see also*, *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 364 (6th Cir. 2001) (evidence plaintiff was terminated less than a year after filing a first EEOC complaint and three months after filing a second created a genuine issue of material fact as to causation); *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (finding temporal proximity sufficient to allege causation when the plaintiff was fired three months after filing a charge with the employment commission).

If there is a lapse of time, the employee "must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool and Die Co.*, 516

---

actions. It appears that Plaintiff only advances his removal as the adverse employment action upon which his retaliation claim is based. The mention of the other adverse actions is in the context of Plaintiff's argument that the reasons for his removal were pretextual. However, given Defendant's concession in its initial brief that the first three elements have been met, Plaintiff's failure to discuss this issue in its response is understandable. Although Plaintiff did not have an opportunity to address the argument raised in Defendant's reply brief, the Court notes that the "the definition of 'adverse employment action' is broader in retaliation cases than discrimination cases." *Dendinger v. Ohio*, 207 F. App'x 521, 527, n.6 (6th Cir. 2006); *see also*, *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 776 (6th Cir. 2018) (citation omitted). However, the ultimate disposition of this motion is that Plaintiff's retaliation claim may proceed based on the March 2018 removal. The Court will not determine, at this time, whether the claim encompasses additional alleged adverse employment actions.

7

F.3d 516, 525 (6th Cir. 2008); *see also*, *Kenney*, 965 F.3d at 449 ("Temporal proximity alone generally is not sufficient to establish causation."). Other evidence supporting a causal link "has commonly included evidence of additional discrimination occurring between the date at which the employer learned of the protected activity and the date of termination or other adverse employment action." *Barrow v. City of Cleveland*, 773 F. App'x 254, 264 (6th Cir. 2019) (citing *Mickey*, 516 F.3d at 526).

Defendant admits there is temporal proximity between the March 7, 2018, EEOC Charge and the March 20, 2018, termination and that such proximity can be prima facie proof of retaliation. (Doc. No. 25 at 18). Defendant argues that in this case, the other available evidence cuts against any temporal inference that retaliation was the but-for cause of Plaintiff's removal. Defendant contends it began discussing removing Plaintiff as director in September 2017, before any of the decision-makers were aware Plaintiff had filed internal grievances against them and others. Defendant further argues that although the EEOC charge and the termination letter are very close in time, Defendant began drafting a removal letter in January 2018, months before Plaintiff filed the EEOC charge.

Plaintiff argues that the close temporal proximity between the EEOC charge on March 7, 2018, and his removal less than two weeks later on March 20, 2018, is sufficient to establish a causal connection. Plaintiff also points out that the EEOC charge was not his only protected activity – before filing the EEOC charge, Plaintiff made a complaint of discrimination to the EEO office in August 2017. Plaintiff alleges a retaliatory atmosphere followed this initial complaint and culminated in his removal in March 2018.

Drawing all inferences in Plaintiff's favor, the Court finds that Plaintiff has presented sufficient evidence to establish a prima facie claim of retaliation. The Court notes that with

8

regard to the timing of the adverse action, Cyrus testified that beginning mid-September 2017, she, John Sloop, and Kathryn Dudley were having "conversations around the question of leadership with the writing studio," but that in October 2017, when discussions were tabled, she had not yet made a formal recommendation. (Cyrus Dep., Doc. No. 27-5 at PageID# 374). Thus, the evidence indicates that a decision regarding removal had not yet been reached when Cyrus and Sloop learned of Plaintiff's internal grievances. Although they suspended discussions of Plaintiff's performance, Cyrus and Sloop appear to have decided to remove Plaintiff as Director either during the investigation or immediately after the investigation was completed. The investigation concluded in late December 2017 or early January 2018 and Sloop sent Cyrus a draft letter listing reasons for Plaintiff's removal on January 11, 2018. (*See* Doc. No. 35 at ¶ 35).

Moreover, in addition to the timing, Plaintiff provides other evidence from which to infer retaliatory motive. Plaintiff claims the EEO office did not "truly" investigate his complaints and failed to interview any of the witnesses he named. The Court need not delve into the thoroughness of the internal investigation, but the EEO director testified that her office did not interview any of the staff members Plaintiff requested be interviewed.[3] (Jenious Dep., Doc. No. 27-2 at PageID# 301). Also, when Plaintiff expressed concern of retaliation and asked for a different reporting structure while his claims were investigated, Cyrus determined he should be placed on paid administrate leave beginning December 18, 2017. The curious timing of Plaintiff's administrative leave has not escaped the Court's notice. While perhaps explainable based on the timing of Plaintiff's request for a different reporting structure, Plaintiff's administrative leave began at the end of the academic semester, mere weeks before the

---

[3] She said that this was because Plaintiff did not provide the names of people he thought should be interviewed until the investigation was almost complete. (Jenious Dep., Doc. No. 27-2 at PageID# 301).

9

investigation was resolved, and the Acting Director who was appointed while Plaintiff was on administrative leave, remained in that role. (Doc. No. 34 at ¶ 33). Finally, the Court notes that although the September discussions of concerns regarding Plaintiff's performance were centered around the failure to hold Writing Studio hours at the Commons Center, several of the items listed in the removal letter as examples of Plaintiff's "leadership challenges," took place in whole or in part in December 2017, while the investigation was pending.

Viewed in the light most favorable to the Plaintiff, before he made his complaint of discrimination in August 2017, there was concern over his failure to hold hours at the Commons Center and by January, although discussions regarding his removal had been suspended, he had garnered a list of complaints, which ultimately resulted in his removal – a decision that was apparently reached immediately after the investigation was concluded and Defendant felt free to officially consider removal. Considered as a whole, these facts are sufficient to establish a prima facie claim of retaliation for purposes of summary judgment.

Defendant has met its burden to offer non-retaliatory reasons for removal. As stated in the March 20, 2018 letter, Defendant claims Plaintiff was removed as Writing Director due to "challenges with your leadership on several fronts," including: (1) leaving a position for an assistant for tutoring unfilled; (2) deciding to stop Writing Studio hours at the Commons Center and resisting reinstatement of these hours; (3) interjecting himself into an email conversation regarding job classification of another employee; (4) advocating for a change in job classification for a subordinate employee even though the position did not exist; and (5) failing to provide a list of job duties when requested. (Doc. No. 27-1 at PageID# 211-12). The letter also complains that Plaintiff's communications are not "clear and direct." (*Id*.).

10

Case 3:18-cv-01310 Document 44 Filed 08/25/20 Page 10 of 14 PageID #: 1176

The burden then shifts to Plaintiff to demonstrate that the reasons given were "mere pretext." *Kenney*, 965 F.3d at 448. Pretext can be established by showing that the proffered reason was factually false, did not actually motivate discharge, or was insufficient to motivate discharge. *Tingle v. Arbors at Hillard*, 692 F.3d 523, 530 (6th Cir. 2012). Courts have recognized that in retaliation cases, an employer's true motivations are particularly difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage. *Singfield*, 389 F.3d at 564. "[C]aution should be exercised in granting summary judgment once a plaintiff has established a prima facie inference of retaliation through direct or circumstantial evidence." *Id; see also, U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983) (acknowledging that discrimination cases present difficult issues for triers of fact because there is rarely "'eyewitness' testimony as to the employer's mental process.") "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, [the] prima facie case is sufficient to support an inference of discrimination at trial." *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 508 (6th Cir. 2014) (citation omitted).

The Court notes that the decision to remove Plaintiff from his position as Director is not said to be based on any one specific reason, but generally based on "challenges with your leadership on several fronts." The Court views the reason given as one that is inherently subjective and almost certainly raises questions of fact for the jury as to whether these "challenges" were sufficient to motivate discharge or if the discharge was in fact retaliatory.

The general "challenges to leadership" is supported by a number of examples of such challenges, which Plaintiff has addressed individually. For example, with regard to the complaint that he did not hire an assistant for tutoring, Plaintiff claims that he tried to fill the

11

position but the people who needed to approve hiring decision were either uncooperative or specifically denied his requests. (Def. Dep., Doc. No. 27-1 at PageID# 149-50). Plaintiff's explanation draws credibility from the testimony of Kathryn Dudley, then executive assistant to Vice Provost Cyrus, who testified that the process of approving job positions and announcements involved several levels of review approval. (Dudley Dep., Doc. No. 27-6 at PageID# 410). Moreover, the removal letter insinuates some fault on the part of Plaintiff for the fact that the position was "still vacant and has not been posted, as of March, 2018," even though it is undisputed that Plaintiff did not resume the duties of Director after he was placed on administrative leave in December 2017. Regarding stopping the writing studio hours at the Commons Center, Plaintiff stated that he had direct permission and encouragement from Cyrus to do so. (*Id*. at PageID# 150). Kathryn Dudley, Cyrus's executive assistant, testified that there were staffing shortages that made it challenging to staff both Writing Studio sites during the first two months of the semester and that she had discussed these issues with Sloop.

The final three items listed in the letter are cited as evidence that Plaintiff did not handle the "decision-making and consensus-building work expected of a director" and "of late [has] actively sought to undermine decisions that were made by the Institution's administrative leadership." The three examples provided are: (1) on December 12, 2017, Plaintiff interjected into an email conversation to express disagreement with a change in classification of a professor from faculty to staff; (2) also in December 2017, Plaintiff advocated for a change in job title for one of his employees even though the "position does not exist"; and (3) Plaintiff did not provide a list of his job responsibilities as requested in October and December 2017.

Plaintiff does not deny that he was involved in the two employment classification issues cited. He argues, however that the reason given is insufficient to motivate his removal and

12

cannot be viewed as a believable justification. Regarding the failure to provide a list of his job duties, Plaintiff states that the request to provide a list of his job duties came about when he himself asked for such a list because he was receiving contradictory instructions regarding his new responsibilities for tutoring services from different people and was working sixteen hours a day trying to do everything asked of him. Plaintiff claims that he asked for a list of his job duties and that Sloop responded by asking him to make a list himself. (Pl. Dep., Doc. No. 27-1 at PageID# 154; *see also*, Doc. No. 27-1 at PageID# 223 (Sept. 16, 2017 email from Plaintiff to Sloop requesting "a description of my job, with a full breakdown of my time and responsibilities")). Plaintiff claims, however, that he did send a list of duties that he was performing. (*Id.*; *see also*, Doc. No. 27-1 at PageID# 236 (December 12, 2017 email from Plaintiff to Sloop stating, "you have yet to supply me with a job description or list of expectations (despite the several memos I have given you detailing the scope of my responsibilities)")). Moreover, the December 12, 2017 email from Sloop appears to concede there was not a position description for Plaintiff's position, stating, "[O]nce we develop a position description based on concrete information, we can develop evaluation standards that will align with your actual duties." (Doc. No. 27-1 at PageID# 236). Sloop added, "if you feel the end of the semester is the wrong time to make su[ch] a list, then please do so at the start of spring semester 2018." (*Id.*). Shortly thereafter Plaintiff was placed on administrative leave and an acting director took over the Writing Studio.

Viewing the evidence in the light most favorable to the Plaintiff, as the Court must at this stage, the Court finds Plaintiff has submitted evidence from which a jury could conclude that the reason stated for Plaintiff's termination was pretext. Accordingly, Defendant's motion for summary judgment on Plaintiff's claim for retaliation is denied.

## IV. CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgement is granted in part, denied in part. Plaintiff concedes his discrimination claims should be subject to dismissal. Accordingly, Defendant's Motion is granted as to the discrimination claims. Defendant's Motion is denied as to the retaliation claim. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE